UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MITERRIO BANKS,

     Applicant,

v.                                    CASE NO. 8:21-cv-1780-SDM-NHA

SECRETARY, Department of Corrections,

     Respondent.

_____/

## ORDER

Banks applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his conviction for first-degree felony murder, for which he is imprisoned for life.  Numerous exhibits ("Respondent's Exhibit __") support the response.  (Doc. 7-2)  The respondent concedes that the application is timely but argues that each ground lacks merit.

## I. BACKGROUND[1]

On the evening of January 24, 2008, Corey Rocker called an acquaintance and asked to purchase drugs.  The acquaintance "had just gotten out of jail" and could not provide the drugs.  (Respondent's Exhibit 8 at 440)  Rocker asked for the telephone number of Brennon Days, who had previously sold drugs to Rocker.  The acquaintance gave Rocker the number.

---

[1] This summary of the facts derives from the trial transcript.  (Respondent's Exhibit 8)

Later that evening, Rocker and Banks went to the house of another acquaintance, Golden Butler.  Once inside, Rocker and Banks passed a handgun "back and forth."  (Respondent's Exhibit 8 at 462)  Also, Rocker called Days several times.  During one call, Butler heard Rocker say, "How long and where are you?"  (Respondent's Exhibit 8 at 464)  Butler asked Rocker to whom he was speaking.  Banks told Butler to "shush."  (Respondent's Exhibit 8 at 463)  After the call, Rocker and Banks asked Butler whether he "want[ed] to go handle something."  (Respondent's Exhibit 8 at 464)  Butler declined the invitation.

Rocker and Banks left the house with the handgun.  Two minutes later, Butler left the house to sell cocaine and walked about a car length behind Rocker and Banks.  A car pulled into a nearby driveway.  Days was the driver.  Butler saw Banks approach the car and lean into the driver's side window.  Banks asked Days, "Where the money at?"  (Respondent's Exhibit 8 at 470)  Butler heard a gunshot and ran toward his house.  Rocker and Banks fled in the opposite direction.  Butler heard Banks tell Rocker, "I think he dead."  (Respondent's Exhibit 8 at 470–71)  Days died from a gunshot wound to his head.

Banks left a thumbprint on the driver's side door of the car.  Police found a trace amount of gunshot residue on Rocker's hands the day after the shooting, but no residue was found on Banks's hands.

Rocker and Banks were charged with first-degree felony murder.  (Respondent's Exhibit 2; Respondent's Exhibit 8 at 22)  The prosecution alleged that Banks had shot Days during a robbery or an attempted robbery.  (Respondent's

Exhibit 2)  The two defendants were tried together.  The jury found them guilty as charged and further found that Banks was the shooter.  (Respondent's Exhibit 8 at 932–33; Respondent's Exhibit 12)

## II. <u>STANDARD OF REVIEW</u>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal

law, as determined by the Supreme Court of the United
States."  Under the "contrary to" clause, a federal habeas
court may grant the writ if the state court arrives at a
conclusion opposite to that reached by this Court on a
question of law or if the state court decides a case
differently than this Court has on a set of materially
indistinguishable facts.  Under the "unreasonable
application" clause, a federal habeas court may grant the
writ if the state court identifies the correct governing legal
principle from this Court's decisions but unreasonably
applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable[;] . . . an unreasonable application is different

from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).  "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562

U.S. 86, 103 (2011).  *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical

point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if,

and only if, it is so obvious that a clearly established rule applies to a given set of

facts that there could be no fairminded disagreement on the question . . . .");  *Woods v.*

*Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those

holdings must be objectively unreasonable, not merely wrong; even clear error will

not suffice.") (citing *Woodall*, 572 U.S. at 419).  *Accord Brown v. Head*, 272 F.3d 1308,

1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of

the state court decision that we are to decide.").  The phrase "clearly established

- 4 -

Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

In a *per curiam* decision without a written opinion, the state appellate court affirmed the denial of Banks's Rule 3.850 motion for post-conviction relief. (Respondent's Exhibit 53)  The state appellate court's *per curiam* decision warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due."  *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002).  *See also Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), *and Bishop v. Warden*, 726 F.3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.

Banks bears the burden of overcoming by clear and convincing evidence a

state court's fact determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).

## III. <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Banks claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to *Strickland*,
>
>> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious

as to deprive the defendant of a fair trial, a
trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690.  *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Banks must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.  To meet this burden, Banks must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Banks cannot meet his burden by showing that the avenue chosen by counsel proved unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic

choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

Sustaining a claim of ineffective assistance of counsel under Section 2254(d) is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. *See Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

In determining "reasonableness," Section 2254(d) authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" and not independently assessing whether counsel's actions were reasonable. *Putman v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001). The presumption of correctness and the highly deferential standard of review require that the analysis of each ground begin with the state court's analysis.

**<u>Ground One:</u>**

Banks asserts that trial counsel provided ineffective assistance during *voir dire* by failing to move to strike the jury panel based on "prejudicial statements" by two prospective jurors. (Doc. 1 at 6) During *voir dire*, the trial court asked whether anyone knew Banks. Prospective juror Ogletree stated that he recognized Banks

from "work[ing] at the jail for 10 years." (Respondent's Exhibit 8 at 37)  Ogletree approached the bench and claimed that he could not be impartial because of his interactions with Banks. *Voir dire* resumed.  Prospective juror Richards stated that he recognized Rocker and Banks from "the news" and that he "was pretty sure it was a violent crime." (Respondent's Exhibit 8 at 108)

Counsel for Rocker moved to strike "the entire panel" based on Ogletree's and Richards's statements. (Respondent's Exhibit 8 at 124–28)  Counsel was "concerned" that Ogletree "said he was a deputy and . . . knew [Banks]" from working at the jail. (Respondent's Exhibit 8 at 124–25)  Also, counsel argued that Richards's comment about "the news" may have suggested to the panel "that there may be some other stuff out there." (Respondent's Exhibit 8 at 128)  Counsel for Banks did not join the motions to strike or otherwise express a view on the matter. The court declined to strike the entire panel but excused Ogletree and Richards for cause.

Banks faults his counsel for failing to move to "strike the jury panel and move for a mistrial." (Doc. 1 at 6)  He asserts that, had counsel taken these steps, the court would have allowed the parties to "select jurors from a new impartial jury panel." (Doc. 1 at 7)

The post-conviction court rejected this claim because the record "refuted" Banks's allegations. (Respondent's Exhibit 43 at 3)  The court noted that counsel for Rocker "moved to strike the entire panel based on Ogletree's and Richards's comments." (Respondent's Exhibit 43 at 3)  The court declined to find that Banks's

"counsel was ineffective because he did not echo [Rocker's] motion." (Respondent's Exhibit 43 at 3)  Rocker and Banks "were tried together and judged by the same panel of jurors." (Respondent's Exhibit 43 at 3)  Therefore, "both [counsel for Rocker and counsel for Banks] had equal interest in seating a fair and impartial panel on behalf" of their clients.  (Respondent's Exhibit 43 at 3)  Because Rocker's "motions to strike the entire panel were for the benefit of both defendants," the court held that counsel for Banks "was not ineffective for failing to parrot [Rocker's] motions." (Respondent's Exhibit 43 at 3–4)

The rejection of this claim was reasonable.  To prevail on his assertion of ineffective assistance, Banks must "show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." *Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020).  Banks cannot meet this burden.  As explained above, the trial court denied Rocker's motions to strike the jury panel.  Banks fails to explain why his counsel was ineffective for declining to join motions that were doomed to fail.  "[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017); *see also Rasheed v. Smith*, 221 F. App'x 832, 836 (11th Cir. 2007) ("[T]rial counsel's performance was not deficient under *Strickland* — the filing of a mistrial motion, or a motion for severance, would have been futile and thus, counsel's decision not to pursue this course of action was not deficient under *Strickland*.").

Because the post-conviction court did not reach the prejudice prong, *de novo* review applies to that element. *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (reviewing the prejudice prong *de novo* because the state court "never reached the issue of prejudice"). Even under *de novo* review, Banks cannot show "a reasonable probability that, but for counsel's [failure to join Rocker's motions], the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014). Banks asserts that, had counsel joined Rocker's motions, "a new jury would have been impaneled." (Doc. 8 at 4) But nothing in the record suggests that Banks's joining the motions would have caused the court to reach a different result. Therefore, Banks fails to satisfy *Strickland*'s prejudice prong.

**<u>Ground Two:</u>**

Banks asserts that trial counsel rendered ineffective assistance by failing to call Darcus Coley as a witness. After the shooting, Coley shared a jail cell with Golden Butler, a key prosecution witness. Butler allegedly told Coley "what happened" during the shooting. (Doc. 1 at 9) In this version of events, Butler and Rocker entered the victim's car to purchase drugs. Inside the car, Butler "pulled a gun" on the victim, and Rocker said, "You know what time it is." (Doc. 1 at 9) When the victim "parked the car," Butler fired the gun. (Doc. 1 at 9) Banks argues that, had counsel called Coley to testify at trial, the jury would have heard "witness testimony indicating [Banks's] innocence of the crime." (Doc. 1 at 10)

In his opening statement, counsel said that he intended to call Coley as a witness. On the third day of trial, however, counsel informed the court that Coley

no longer "want[ed] to testify" because "persons unknown to him had been threatening his family." (Respondent's Exhibit 8 at 594) The court questioned Coley on the record. Coley said, "I ain't going under oath. . . . I ain't got no reason to be testifying for nobody." (Respondent's Exhibit 8 at 669) The court appointed counsel to advise Coley on his "rights and potential responsibilities." (Respondent's Exhibit 8 at 670) After conferring with counsel, Coley said he would be willing to testify. The parties discussed the possibility that if Coley testified, the prosecution would call Tony Cox as a rebuttal witness. Cox allegedly would testify that he and Coley had fabricated Coley's story.

After the prosecution rested, counsel stated that he would not call Coley as a witness. Counsel asked the court "to inquire [of Banks]" about the "tactical decision not to call Coley as a witness." (Respondent's Exhibit 8 at 750) The court asked Banks whether he agreed that not calling Coley was "the best strategy." (Respondent's Exhibit 8 at 751) Banks answered, "Yes, sir." (Respondent's Exhibit 8 at 751)

Banks now contends that counsel performed deficiently by failing to call Coley at trial. According to Banks, counsel "manipulated" him into agreeing that Coley "should not testify." (Doc. 1 at 8) The post-conviction court rejected this claim on the ground that Banks "agreed with counsel's tactical decision not to call Coley." (Respondent's Exhibit 46 at 3) The court explained that Banks, "after watching the trial, agreed to proceed with a strategy of not calling Coley." (Respondent's Exhibit 46 at 3) Banks could not "challenge this decision because, in hindsight, he believe[d]

it was flawed." (Respondent's Exhibit 46 at 3)  Consequently, the court found that Banks was "not entitled to relief." (Respondent's Exhibit 46 at 3)

The rejection of this claim was reasonable.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.  A strategic choice "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).  "Because *Strickland* allows for a range of strategic choices by trial counsel, so too is there considerable leeway for state courts to determine the reasonableness of those choices." *Franks*, 975 F.3d at 1176.  Therefore, to prevail on his ineffective assistance claim, Banks must "show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." *Franks*, 975 F.3d at 1176.

Banks fails to overcome the "doubly deferential" standard of review required by *Strickland* and AEDPA.  *Pinholster*, 563 U.S. at 190.  A reasonable jurist could conclude that counsel acted "within the wide range of reasonable professional conduct" when he declined to call Coley as a witness.  *Franks*, 975 F.3d at 1176.  After consulting with court-appointed counsel, Coley agreed to testify.  But he was a reluctant witness, and his family had apparently received threats from "persons unknown to him." (Respondent's Exhibit 8 at 594)  Counsel's "decision not to call a reluctant witness . . . might reasonably be considered sound trial strategy." *Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 659 (11th Cir. 2014); *see also DeYoung v.*

- 14 -

*Schofield*, 609 F.3d 1260, 1285–86 (11th Cir. 2010) (counsel not deficient for failing to call witnesses who "were reluctant to testify at trial").  Moreover, the prosecution might have called a rebuttal witness to testify that he and Coley had fabricated Coley's story.  The possibility of damaging rebuttal testimony suggests that counsel acted reasonably in declining to call Coley.  *See Williams v. Collins*, 16 F.3d 626, 634 (5th Cir. 1994) (counsel not ineffective for making a "knowing, strategic decision" to refrain from presenting evidence that would elicit damaging rebuttal testimony).  Lastly, Banks's consent is "probative of the reasonableness of the chosen strategy and of trial counsel's performance."  *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995).  In short, a reasonable jurist could conclude that "[some] competent counsel would have taken the action that [Banks's] counsel did take."  *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000).

**<u>Ground Three:</u>**

Banks faults trial counsel for failing to "present a coherent theory of defense" in his closing argument.  (Doc. 1 at 12)  According to Banks, counsel should have advanced a "theory of absolute innocence."  (Doc. 1 at 12–13)  Instead, counsel allegedly "presented a number of speculative scenarios that conceded [Banks's] presence and [implied] his participation in criminal activity."  (Doc. 1 at 12)

The post-conviction court found that Banks was "not entitled to relief because counsel did present a coherent theory of defense."  (Respondent's Exhibit 46 at 4) As the court explained, counsel's "theory was that the state had not proven its case beyond a reasonable doubt."  (Respondent's Exhibit 46 at 4)  Counsel "argued that

the state's case rested entirely on Butler's testimony, and because Butler was not credible, the state had not proven its case." (Respondent's Exhibit 46 at 5)  In support, counsel asserted that Butler's "demeanor was 'robotic,' his flight demonstrated consciousness of his own guilt, his testimony (which implicated [Banks] but not [Rocker]) was suspicious because Butler was friends with [Rocker], and he sold drugs." (Respondent's Exhibit 46 at 5)  Also, the court pointed to counsel's argument that Banks's "fingerprint was not meaningful because fingerprints [did] not identify when they were left." (Respondent's Exhibit 46 at 5)  In short, "[a]ll of counsel's arguments were coherent arguments that the state had not proven the case beyond a reasonable doubt." (Respondent's Exhibit 46 at 5)  Therefore, the court held that the record "refuted" Banks's "allegation that counsel presented no coherent theory of the case." (Respondent's Exhibit 46 at 5)

The post-conviction court acted reasonably in rejecting this claim.  As the court explained, counsel attempted to create reasonable doubt by arguing (1) that Butler, the most important prosecution witness, lacked credibility and (2) that the fingerprint on the driver's side door did not necessarily establish Banks's guilt.  This "reasonable doubt" defense was both coherent and "within the wide range of reasonable professional conduct." *Franks*, 975 F.3d at 1176.  Banks cannot show that counsel's decision to argue reasonable doubt "was so patently unreasonable that no competent attorney" would have made the same choice. *Dingle*, 480 F.3d at 1099; *see also McNish v. Westbrooks*, 149 F. Supp. 3d 847, 857 (E.D. Tenn. 2016) ("[C]ounsel

adopted a reasonable doubt strategy in the guilt phase of petitioner's trial, and it is not this court's place to second-guess that strategic decision.").

**Ground Four:**

As noted above, the prosecution alleged that Banks committed felony murder by shooting Days during a robbery or an attempted robbery.  (Respondent's Exhibit 2)  The trial court instructed the jury accordingly (Respondent's Exhibit 8 at 835):

> To prove the crime of first-degree felony murder, the state must prove the following three elements beyond a reasonable doubt:
>
> One, Brennon Days is dead;
>
> Two, the death occurred as a consequence of and while Miterrio Banks was engaged in the commission of a robbery or the death occurred as a consequence of and while Miterrio Banks was attempting to commit a robbery;
>
> Three, Miterrio Banks was the person who actually killed Brennon Days.

Banks asserts that trial counsel rendered ineffective assistance by failing to object to two aspects of the jury instructions.  First, Banks alleges that the instruction on felony murder failed to inform the jury that robbery requires proof that "property was taken by the perpetrator."  (Doc. 1 at 15)  Second, Banks claims that the instructions failed to define "attempt" under Florida law.  (Doc. 1 at 15)

The post-conviction court rejected this claim.  The court noted that the felony murder instruction did inform the jury that "taking was an element of robbery." (Respondent's Exhibit 43 at 6)  Specifically, the instruction stated that "[r]obbery means the taking of money or other property . . . from the person or custody of

another with intent to either permanently or temporarily deprive the person or the owner of the money or other property." (Respondent's Exhibit 8 at 835) Therefore, the court held that counsel was not "deficient" for failing to raise this meritless objection. (Respondent's Exhibit 43 at 6)

The court acknowledged that the instructions did not define "attempt," which requires proof of "(1) a specific intent to commit the crime and (2) an overt act done toward its commission that is beyond mere preparation." *Enix v. State*, 69 So. 3d 354, 357 (Fla. 2d DCA 2011). The court found, however, that "the issue at trial was not whether [Banks's] actions went far enough to constitute an attempt, but whether the transaction was a robbery or a drug deal." (Respondent's Exhibit 49 at 1) The prosecution "presented evidence suggesting that [Banks] intended to rob the victim, while the attorneys for both defendants argued that it was a drug deal." (Respondent's Exhibit 49 at 1) If the "transaction" was a robbery, Banks's conduct "had progressed far enough to be considered an attempt — demanding money from the victim was an act beyond talking about it, and [Banks] would have completed the robbery but for the fact that he failed to do so." (Respondent's Exhibit 49 at 2) By contrast, if the "transaction" was a drug deal, the jury "would not have found [Banks] guilty of felony murder whether [the attempt] instruction was given or not." (Respondent's Exhibit 49 at 2) Accordingly, the court held that Banks suffered no prejudice because the "attempt instruction would . . . not change the outcome of the trial." (Respondent's Exhibit 49 at 2)

The rejection of this claim was reasonable.  Contrary to Banks's assertion, the instructions did inform the jury that "taking was an element of robbery." (Respondent's Exhibit 43 at 6)  Thus, counsel was not "deficient for failing to raise [this] meritless claim." *Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008). Moreover, Banks cannot show "a reasonable probability that requesting an [attempt] instruction would have changed the outcome of [the] trial." *Hunt v. Comm'r, Ala. Dep't of Corr.*, 666 F.3d 708, 729 (11th Cir. 2012).  As the post-conviction court explained, "the issue at trial was not whether [Banks's] actions went far enough to constitute an attempt, but whether the transaction was a robbery or a drug deal." (Respondent's Exhibit 49 at 1)  The jury must have concluded that the transaction was a robbery because Banks was convicted of felony murder.  Also, the jury found that Banks "discharge[d] a firearm during . . . the offense."  (Respondent's Exhibit 12 at 1)  In these circumstances, an attempt instruction would not have caused the jury to reach a different verdict.  Therefore, the post-conviction court reasonably found no prejudice from the absence of that instruction.  *See Morgan v. Steele*, No. 4:07-cv-0877-TCM, 2010 WL 3564425, at *15 (E.D. Mo. Sept. 7, 2010) (no prejudice from failure to define attempt for jury because "[t]he inclusion of a definition of 'attempt' . . . would not have changed the outcome of the trial").

**Ground Five:**

Banks asserts that trial counsel performed deficiently during closing argument by "conced[ing] [his] involvement in the robbery."  (Doc. 1 at 17)  The post-conviction court rejected this claim because "counsel did not concede that [Banks]

was involved in the robbery." (Respondent's Exhibit 46 at 5)  As the court noted, "[c]ounsel argued that the fingerprint [on the driver's side door] did not demonstrate that [Banks] was guilty beyond a reasonable doubt." (Respondent's Exhibit 46 at 5) Counsel claimed that the fingerprint was open to several different interpretations — Banks "was guilty," Banks "was at the scene but was not the triggerman," Banks "was involved in a drug deal," or Banks left the fingerprint "on an entirely different occasion." (Respondent's Exhibit 46 at 5)  The court noted that "[t]his [was] not a concession." (Respondent's Exhibit 46 at 5)  Rather, counsel attempted to offer "a reasonable explanation for the evidence where [Banks] was not involved in a robbery." (Respondent's Exhibit 46 at 5)  Also, the court noted that counsel "attack[ed] Butler's credibility as the state's main witness." (Respondent's Exhibit 46 at 5)  "This portion of counsel's argument did not concede that a robbery occurred[;] [counsel] merely argued that Butler had demonstrated consciousness of guilt and was therefore not credible." (Respondent's Exhibit 46 at 5–6)  In sum, the court found that counsel "did not concede the underlying robbery at any point during closing argument." (Respondent's Exhibit 46 at 6)

The post-conviction court correctly rejected this claim.  The court accurately summarized counsel's closing argument.  (Respondent's Exhibit 8 at 864–80) Counsel explained his defense in plain language (Respondent's Exhibit 8 at 869–70):

> Let me tell you at this juncture, if I may, exactly what my theory of defense is on behalf of Miterrio Banks.  And I will tell you in no uncertain terms that it is our theory of defense that the State Attorney has not proved beyond and to the exclusion of every reasonable doubt that Miterrio Banks was the shooter.  They have not proved beyond and

> to the exclusion of every reasonable doubt that Miterrio
> Banks knew there was going to be a robbery or that he
> participated in a robbery or an attempted robbery or that
> he assisted Golden Butler or any other person in such an
> undertaking.  That is our defense.

Moreover, counsel argued that Banks's fingerprint proved only that "at some point in time [he] touched that car with his finger."  (Respondent's Exhibit 8 at 867)  Because counsel never conceded that his client participated in a robbery, Banks is entitled to no relief on this claim.

**Ground Six:**

Lastly, Banks contends that the "cumulative effect of trial counsel's ineffective assistance resulted in enough prejudice to undermine confidence in the outcome of [his] trial."  (Doc. 1 at 19)  "Under the cumulative error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial."  *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014).  A cumulative error claim "must fail," however, where none of the "individual claims of error" has "any merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).  Because each individual claim of error lacks merit, Banks cannot show cumulative prejudicial effect.

## IV. CONCLUSION

Banks's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Banks and **CLOSE** this case.

**CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Because Banks fails to demonstrate either a substantial showing of the denial

of a constitutional right or that reasonable jurists would debate both the merits of the

grounds and the procedural issues, a certificate of appealability and leave to appeal *in*

*forma pauperis* are **DENIED**.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473,

478 (2000).  Banks must obtain permission from the court of appeals to appeal *in*

*forma pauperis*.

ORDERED in Tampa, Florida, on August 12, 2024.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE